UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
GIANFRANCO "JOHN" BENTIVOGLIO,

                         Plaintiff,                         18-cv-2040 (PKC)

          -against-                              OPINION
                                                      AND ORDER

EVENT CARDIO GROUP, INC., and
EFIL SUB OF ECG, INC.,

                         Defendants.
-----------------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiff Gianfranco "John" Bentivoglio filed his Second Amended Complaint ("SAC") on February 15, 2019. (Doc 62.) The SAC alleges three causes of action against defendants Event Cardio Group, Inc. ("ECGI") and EFIL Sub of ECG, Inc. ("EFIL"): (1) fraudulent filing of information returns in violation of 26 U.S.C. § 7434; (2) breach of contract; and (3) unjust enrichment. Bentivoglio alleges that EFIL is ECGI's alter ego, and thus a proper defendant here. (Doc 62 ¶¶ 47-66.) Formerly the sole director and officer of ECGI, Bentivoglio resigned in 2016 and Gary Blom then became the President and CEO of the company. (Id. ¶ 14.) Bentivoglio contends that in July 2017, ECGI sent Bentivoglio IRS Forms 1099 that wrongly reflected business-related expenses as personal income to Bentivoglio in an amount in excess of $700,000. (Id. ¶¶ 40, 48.) Bentivoglio states that ECGI, via its auditors, had access to receipts and records showing that these were business expenses, but instead chose to "extort" Bentivoglio. (Id. ¶ 49.)

        As part of the terms of his resignation, Bentivoglio and ECGI entered into a contract (the "Consulting Agreement") that provided for monthly payments to Bentivoglio of

$10,416.67, and an additional monthly fee of $1,000, to be paid to him for four years. (Id. ¶ 29.) The Consulting Agreement included New York choice of law and forum selection provisions. (Id. ¶ 30.) Bentivoglio states that in May 2017, ECGI stopped making payments due to him under the Consulting Agreement and remains in breach of the contract. (Id. ¶¶ 36, 58-60.)

Defendants move to dismiss the first cause of action for lack of personal jurisdiction, pursuant to Rule 12(b)(2), Fed. R. Civ. P., and to dismiss all claims against defendant EFIL for lack of personal jurisdiction on the grounds that Bentivoglio has not adequately and plausibly alleged that EFIL is ECGI's alter ego. Defendants also move to dismiss the third cause of action as duplicative of Bentivoglio's breach of contract claim. (Doc 80.) For the reasons set forth below, defendants' motion will be granted.[1]

BACKGROUND

When deciding a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), Fed. R. Civ. P., the Court may consider averments of fact outside the pleadings, including in affidavits. Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 84 (2d Cir. 2013). On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), Fed. R. Civ. P., however, the Court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegation in the light most favorable to plaintiff, and construe the complaint liberally." Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007) (internal quotation marks and citation omitted). For purposes of a Rule 12(b)(6) motion, the complaint is considered to include writings or statements attached to or incorporated in it by reference. Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995). Bentivoglio filed

---

[1] Because defendants do not challenge the sufficiency of Bentivoglio's breach of contract claim against defendant ECGI, it survives.

- 2 -

his initial complaint on March 6, 2018 (Doc 1), and has amended the pleading twice. (Docs 28, 62.) The SAC (Doc 62) alleges three causes of action: (1) fraudulent filing of information returns (IRS Forms 1099) in violation of 26 U.S.C. § 7434; (2) breach of contract; and (3) unjust enrichment. (Doc 62 ¶¶ 47-66.)

Bentivoglio, a Canadian citizen and resident of Florida, developed NowCardio, a non-invasive heart monitoring device, in 2012. (Doc 62 ¶¶ 1, 10-11.) In 2014, he established ECGI, which owned NowCardio and the National Cardiac Monitoring Center. (Id. ¶ 12.) He operated ECGI as its sole officer and director until 2016. (Id. ¶ 14.) ECGI is a Nevada corporation with offices in Maryland. (Id. ¶ 2; Decl. of Gary Blom (Doc 83) ¶ 4.) On November 1, 2016, Bentivoglio resigned from ECGI and entered into, among other agreements, the Consulting Agreement, under which he would receive monthly payments of $10,416.67 and $1,000 for a four-year period. (Doc 62 ¶¶ 14, 29.) These agreements contain New York choice of law and forum selection provisions. (Id. ¶ 30.) When Bentivoglio resigned, Gary Blom became the sole officer and director of ECGI. (Id. ¶¶ 14, 31.)

In January 2017, ECGI notified Bentivoglio that he had failed to substantiate certain reimbursed expenses as business expenditures from 2014 through 2016, and that ECGI disputed paying him the amounts owed under the Consulting Agreement. (Id. ¶¶ 33-34.) Bentivoglio maintained that he had given receipts reflecting these business expenses to ECGI's accountants, who had in turn provided them to ECGI's auditors. (Id. ¶ 34.) ECGI made payments to Bentivoglio under the Consulting Agreement after raising this issue, but allegedly stopped making these payments in May 2017. (Id. ¶¶ 35-36.)

In July 2017, Bentivoglio received from ECGI IRS Forms 1099 for tax years 2014 through 2016. (Id. ¶ 48.) These forms reflected business-related expenses as income paid to

Bentivoglio in excess of $700,000. (Id. ¶¶ 40, 48-50.) Bentivoglio alleges that ECGI and EFIL, as ECGI's alter ego, filed these forms in violation of 26 U.S.C. § 7434, which prohibits "willfully fil[ing] a fraudulent information return with respect to payments purported to be made to any other person . . . ." (Id. ¶¶ 51-53.) A now-defunct New York law firm, Eaton & Van Winkle, LLP, was listed as ECGI's "care of" address on these IRS forms. (Id. ¶ 40; Decl. of Bradley Nash (Doc 82), Ex. C.) Bentivoglio further alleges that ECGI and EFIL, as ECGI's alter ego, are in breach of the Consulting Agreement by failing to make payments to him owed under the Agreement. (Doc 62 ¶¶ 58-64.) Bentivoglio asserts that the failure to make these payments has also resulted in unjust enrichment of the defendants. (Id. ¶ 66.)

In support of dismissal, defendants argue that the Court lacks personal jurisdiction over ECGI as to the first cause of action because ECGI is a Nevada corporation that does not transact business or maintain an office in New York, and because the conduct giving rise to this claim did not occur in New York. (Doc 84 at 4-11.) Bentivoglio contends that by listing a New York law firm as a "care of" mailing address on the IRS Forms 1099, and by using the services of New York lawyers, ECGI and EFIL, as ECGI's alter ego, are properly sued in New York. (Doc 85 at 5-7.) Defendants also argue that the Court does not have personal jurisdiction over EFIL because Bentivoglio has failed to plead adequate and plausible facts to show that EFIL is the alter ego of ECGI. (Doc 84 at 11-12.) In opposition, Bentivoglio repeatedly asserts that ECGI's own representations establish that EFIL is ECGI's alter ego, but does not provide the substance of these alleged representations. (Doc 85 at 4, 8.) He also alleges that ECGI fraudulently transferred its assets to EFIL in order to avoid its obligations, including the payments owed to Bentivoglio under the Consulting Agreement. (Doc 62 ¶¶ 43-46; Doc 85 at 8-9.) Finally, defendants argue that Bentivoglio does not state a claim for unjust enrichment

because it is duplicative of his breach of contract claim. (Doc 84 at 15.) For his part, Bentivoglio asserts that at this stage of the litigation, he may plead unjust enrichment in the alternative. (Doc 85 at 10-11.) For the reasons set forth below, the Court grants defendants' motion to dismiss.

DEFENDANTS' MOTION TO DISMISS IS GRANTED

I. <u>The First Cause of Action is Dismissed for Lack of Personal Jurisdiction</u>

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 34 (2d Cir. 2010). At the pleading stage, a plaintiff need only make a prima facie showing that personal jurisdiction exists, which "may be established solely by allegations." Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990). The Court may take affidavits and other submissions outside of the pleadings into account when deciding such a motion pursuant to Rule 12(b)(2), Fed. R. Civ. P. Dorchester Fin. Secs., Inc., 722 F.3d at 84.

Where a cause of action arises under a federal statute, such as 26 U.S.C. § 7434, that does not contain a jurisdictional provision, the forum state's personal jurisdiction rules apply. Penguin Grp., 609 F.3d at 35. The Court therefore looks to sections 301 and 302 of the New York Civil Practice Law and Rules ("CPLR"), which govern general and specific personal jurisdiction, respectively. Because ECGI is a Nevada corporation with offices allegedly located in Maryland, and EFIL is alleged to be a Delaware corporation (Doc 62 ¶¶ 2, 4), neither defendant is domiciled in New York.[2] Further, per Blom's declaration, ECGI does not have

---

[2] Plaintiff alleges that ECGI operated as a public company whose shares were traded over the counter on the OTC Markets Group, which the complaint compares to the New York Stock Exchange. This allegation may be read as an attempt to plead that ECGI should be subject to general jurisdiction in New York. (Doc 62 ¶¶ 19, 24-27.) However, "prevailing caselaw accords foreign corporations substantial latitude to list their securities on New York-based stock exchanges and to take the steps necessary to facilitate those listings . . . without thereby subjecting themselves to

offices or conduct business in New York. (Doc 83 ¶¶ 4-6.) Therefore, there is no general jurisdiction over ECGI and CPLR § 301 does not apply. The question here is whether the Court has personal jurisdiction under New York's long-arm statute, CPLR § 302. Section 302(a) provides, in relevant part, that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state . . . ." CPLR § 302(a)(1). The Court concludes that the facts alleged do not satisfy section 302(a)(1), and thus the Court lacks personal jurisdiction over ECGI as to the first cause of action.

For a court to exercise personal jurisdiction pursuant to section 302(a)(1), a defendant must transact business within the state, <u>and</u> the cause of action must arise out of that transaction. Reich v. Lopez, 38 F. Supp. 3d 436, 457-58 (S.D.N.Y. 2014). Bentivoglio argues that because defendants listed a New York "care of" mailing address on the assertedly wrongly-filed Forms 1099, and these IRS filings form the basis of his first cause of action, defendants are subject to personal jurisdiction in New York. (Doc 85 at 5.) Plaintiff's argument fails. ECGI listed an address in "care of" ("c/o") attorneys Eaton & Van Winkle LLP, located at 3 Park Avenue, New York, NY 10016. (Doc 85-2.) This does not mean that ECGI itself has a New York address. Merely listing a New York law firm as a place that ECGI would accept mail does not support a finding that ECGI was "transacting business" in New York sufficient to serve as a basis for personal jurisdiction. Greenman-Perdesen, Inc. v. Berryman & Henigar, Inc., No. 09 Civ. 0167 (TPG), 2009 WL 2523887, at *5 (S.D.N.Y. Aug. 18, 2009) (where an entity "has asked its New York law firm to accept its mail is of no significance" to asserting personal jurisdiction).

---

New York jurisdiction for unrelated occurrences." Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 97 (2d Cir. 2000).

While hiring New York counsel may constitute transacting business under section 302(a)(1), there must be "an articulable nexus or a substantial relationship between the asserted claim and the transacted business." Reich, 38 F. Supp. 3d at 458 (internal quotation marks and citations omitted). There is no such relationship here. First, the retention of Eaton & Van Winkle is insufficient to support the exercise of personal jurisdiction over ECGI because there is no allegation that this law firm participated in preparing or filing the IRS forms at issue. Bentivoglio's complaint states that ECGI's New York counsel (without naming Eaton & Van Winkle specifically) sent Bentivoglio and his New York counsel a letter "disput[ing] payment of his Consulting [Agreement payments] . . . . [and] claim[ing] that Mr. Bentivoglio had failed to substantiate reimbursed business expenditures." (Doc 62 ¶¶ 33-34.) Sending a letter to—or receiving a letter from—counsel in New York is not a basis to exercise personal jurisdiction. Continental Field Serv. Corp. v. ITEC Int'l, Inc., 894 F. Supp. 151, 154 (S.D.N.Y. 1995) ("forwarding a letter to New York in response to a letter from New York does not indicate [] purposeful availment of benefits and obligations of transacting business in New York."); cf. PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1109 (2d Cir. 1997) (finding that defendant transacted business in New York where he did more than "send[] a cease and desist letter to [plaintiff] and attempt[] to settle legal claims.") (internal quotation marks omitted).

Further, per the declaration of Lawrence Lichter, the California accounting firm of Lichter, Yu and Associates prepared and filed the IRS Forms 1099 that are the basis of Bentivoglio's first cause of action. (Doc 82, Ex. B.) The forms were not filed in New York. (Id.) Bentivoglio rather vaguely contends that defendants "used the services of their New York lawyers in connection with the information returns," and again points to ECGI listing Eaton & Van Winkle's New York office as its "care of" mailing address. (Doc 85 at 7.) For the reasons

set forth above, this is an insufficient basis to assert an articulable nexus or substantial relationship between any transaction of business in New York and the first cause of action.

Bentivoglio also asserts that several meetings negotiating his resignation from ECGI, and the ultimate execution of the agreements governing his resignation, including the Consulting Agreement, occurred in New York at the law firm of Eaton & Van Winkle. (Doc 62 ¶¶ 15-16; 28.) Courts in this District have held that signing a contract in New York, "although a link in the chain of causation leading to plaintiff's claims," was an insufficient basis to exercise personal jurisdiction where the cause of action did not arise out of the written agreement. Faherty v. Fender, 572 F. Supp. 142, 147 (S.D.N.Y. 1983). The court in Thackurdeen v. Duke University, citing Faherty, found no personal jurisdiction over defendants under section 302(a)(1) where "contracts signed in New York were a factual precursor" to the relevant incident, but the plaintiffs' "claims do not arise from the contracts the signed in New York." 130 F. Supp. 3d 792, 802 (S.D.N.Y. 2015). Here, the link between these parties' negotiations of Bentivoglio's resignation and the filing of the IRS forms is similarly attenuated. Negotiating and signing these agreements in New York preceded the filing of the disputed tax forms, but the filing of these forms, and thus this cause of action, did not arise out of the contract negotiations or execution. Therefore, those events cannot serve as a hook to exercise personal jurisdiction over ECGI as to the first cause of action. Because the Court lacks personal jurisdiction over ECGI as to this cause of action, even if EFIL were ECGI's alter ego, the Court would also lack personal jurisdiction as to EFIL. See Transfield ER Cape Ltd. v. Indus. Carriers, Inc., 571 F.3d 221, 224 (2d Cir. 2009) ("[I]n general, alter egos are treated as one entity for jurisdictional purposes.") (internal quotation marks and citation omitted).

For these reasons, Bentivoglio's first cause of action is dismissed.

## II. EFIL is Dismissed as a Defendant

Bentivoglio repeatedly alleges that ECGI made representations that EFIL is its alter ego, and therefore, that EFIL is a proper defendant in this case. (Doc 62 ¶¶ 4, 53, 64, 66.) Nowhere, however, does Bentivoglio provide the substance of these representations, but merely realleges the conclusory statement that ECGI and its representatives made these statements about EFIL being an alter ego of ECGI. (Doc 85 at 8-9 (citing Doc 62 ¶ 4).) Bentivoglio further contends that ECGI transferred its assets to EFIL without consideration in order to avoid liability. (Doc 62 ¶¶ 43-46.) These allegations fail to plausibly plead that EFIL is in fact ECGI's alter ego. As a result, Bentivoglio has failed to state a claim against EFIL pursuant to Rule 12(b)(6), Fed. R. Civ. P.

Defendants style their motion to dismiss EFIL on grounds of both lack of personal jurisdiction pursuant to Rule 12(b)(2) and for failure to state a claim pursuant to Rule 12(b)(6), Fed. R. Civ. P. (Doc 84 at 11-15.) Because the Court understands defendants' argument to be that ECGI has failed to state a claim that EFIL is ECGI's alter ego, the Court treats this motion as one pursuant to Rule 12(b)(6). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In assessing the sufficiency of a pleading, a court must disregard legal conclusions, which are not entitled to the presumption of truth. Id. Instead, the Court must examine the well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

"Under New York choice of law principles, the law of the state of incorporation determines when the corporate form will be disregarded." Fletcher v. Atex, Inc., 68 F.3d 1451,

1456 (2d Cir. 1995) (internal quotation marks, alterations, and citation omitted). Defendants contend that Bentivoglio is seeking to pierce ECGI's corporate veil, and therefore, that Nevada law should govern. (Doc 84 at 12.) Bentivoglio's opposition argues—without contesting defendants' choice of law argument—that he has met the alter ego pleading requirements under Nevada law. (Doc 85 at 9.) However, Bentivoglio alleges that EFIL is ECGI's alter ego. (Doc 62 ¶¶ 43-46.) This allegation means, in effect, that EFIL's corporate form should be disregarded so that ECGI and EFIL may be treated as a single entity. In turn, treating these entities as one would allow Bentivoglio to reach the assets allegedly transferred to EFIL to satisfy the payments ECGI contractually owes him under the Consulting Agreement. Kertesz v. Korn, 698 F.3d 89, 91 (2d Cir. 2012) (reviewing application of Delaware law to veil-piercing claim: "[A] court may exercise its equitable power to disregard the legal privilege of the corporate form to reach the owner's assets.") Therefore, it is EFIL's place of incorporation that controls, not ECGI's. Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC, 975 F. Supp. 2d 392, 401 (S.D.N.Y. 2013). Because EFIL is a Delaware corporation, the Court will apply Delaware law to Bentivoglio's alter ego allegations.[3]

Delaware law permits corporate veil piercing "where there is fraud or where a subsidiary is in fact a mere instrumentality or alter ego of its owner." Geyer v. Ingersoll Publ'ns Co., 621 A.2d 784, 793 (Del. Ch. 1992). Delaware courts rarely disregard the corporate form. Nat'l Gear & Piston, Inc., 975 F. Supp. 2d at 401-402. A plaintiff does not need to allege actual fraud, but must show that the entities at issue actually "operated as a single economic entity, and

---

[3] Even if Nevada law governed this question, Bentivoglio's complaint also fails to plausibly plead the elements required to pierce the corporate veil in Nevada. Basic Mgmt. Inc. v. U.S., 569 F. Supp. 2d 1106, 1117-18 (D. Nev. 2008) (listing the three requirements to pierce the corporate veil in Nevada, and finding that plaintiffs had not satisfied them).

that an overall element of injustice or unfairness is present." Id. at 402 (internal quotation marks and citation omitted).

Operating as a "single entity" requires showing the parent entity's "complete domination and control" to such an extent that the subsidiary entity "no longer has legal or independent significance of its own." Wallace ex rel. Cencom Cable Income Partners II, Inc. v. L.P. Wood, 752 A.2d 1175, 1183-84 (Del. Ch. 1999) (internal quotation marks and alterations omitted). Courts consider the following factors when determining whether a parent and subsidiary are a single entity for veil-piercing purposes: "Whether the corporation was adequately capitalized . . .; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds, and whether, in general, the corporation simply functioned as a façade for the dominant shareholder." Fletcher, 68 F.3d at 1458 (internal quotation marks and citation omitted).

Here, Bentivoglio alleges that EFIL is owned and controlled by the same three people as ECGI—Gary Blom, who became ECGI's President and CEO upon Bentivoglio's resignation; Frank Sgro, an investor in ECGI who Bentivoglio alleges controls a majority of ECGI stock; and Gino Alberelli, ECGI's accounting advisor. (Doc 62 ¶¶ 3-4, 43-46.) Allegations of overlapping management, or "a parent's ownership and operation of a subsidiary—even exclusively for the parent's gain—do not merit piercing the corporate veil." Nat'l Gear & Piston, Inc., 975 F. Supp. 2d at 404. Bentivoglio further alleges that Blom, Sgro, and Alberelli transferred ECGI's assets—the NowCardio device and the National Cardiac Monitoring Center—to EFIL without consideration in order to avoid ECGI's liabilities, including payments owed to Bentivoglio. (Id. ¶¶ 43-46.) A transfer of assets is not a basis for piercing the

corporate veil where the plaintiff fails to plead details about the allegedly fraudulent transfer without consideration. Yu v. GSM Nation, LLC, No. 12293–VCMR, 2017 WL 2889515, at *4, n.18 (Del. Ch. July 7, 2017); see also Harco Nat'l Ins. Co. v. Green Farms, Inc., Civ. A. No. 1131, 1989 WL 110537, at *6 (Del. Ch. Sept. 19, 1989) (denying motion for summary judgment, noting that it was "premature to pierce the corporate veil" where plaintiffs had not yet shown that "transfers were done to defraud creditors or . . . merely to siphon off corporate assets, rather than to repay outstanding loans.") Bentivoglio's opposition admits that he "does not have access to information regarding the current corporate structure or corporate assets of either ECGI or EFIL." (Doc 85 at 8.) Without more, such allegations are insufficient to show that ECGI and EFIL are a single entity such that corporate veil piercing would be appropriate here.

Bentivoglio also fails to meet the "injustice or unfairness" prong of Delaware veil piercing. Nat'l Gear & Piston, Inc., 975 F. Supp. 2d at 402; (Doc 62 ¶¶ 43-46.) Fairly read, Bentivoglio pleads that ECGI's breach of contract is a basis to pierce EFIL's corporate veil in order to reach the assets allegedly wrongly transferred to EFIL and to satisfy ECGI's obligations to him. (Doc 62 ¶¶ 46, 63-64.) This is not "the type of 'injustice' . . . [that] is contemplated by the common law rule that piercing the corporate veil is appropriate only upon a showing of fraud or something like fraud." Mobil Oil Corp. v. Linear Films, Inc., 718 F. Supp. 260, 268 (D. Del. 1989). An underlying cause of action—here, breach of contract—cannot "supply the necessary fraud or injustice. To hold otherwise would render the fraud or injustice element meaningless, and would sanction bootstrapping." Id.

For these reasons, Bentivoglio has failed to allege that EFIL is ECGI's alter ego, and therefore has not adequately or plausibly asserted a claim against EFIL.

III. The Third Cause of Action is Dismissed as Duplicative

The Second Circuit has held that under New York law, where there is a valid, enforceable contract that governs the subject at issue, there is "no cognizable claim for unjust enrichment separate from [the] breach of contract claim." Rabin v. Mony Life Ins. Co., 387 F. App'x 36, 42 (2d Cir. 2010); see also Maryland Cas. Co. v. W.R. Grace & Co., 218 F.3d 204, 212 (2d Cir. 2000) ("The notion of unjust enrichment applies where there is no contract between the parties"). One possible exception to this rule is where the plaintiff can "explain[] how the claim is not simply duplicative of [his] other claims." AFP Mfg. Corp. v. AFP Imaging Corp., No. 17-CV-03292 (NSR), 2018 WL 3329859, at *11 (S.D.N.Y. July 6, 2018). Further, where the validity of a contract is in dispute, courts may allow a plaintiff to plead unjust enrichment along with breach of contract claims. Marshall v. Hyundai Motor Am., 51 F. Supp. 3d 451, 471 (S.D.N.Y. 2014)

Here, the Consulting Agreement clearly controls the payment of fees to Bentivoglio, and the validity of this agreement does not appear to be in dispute. Id.; (Doc 62 ¶ 55.) Confusingly, despite defendants not raising the validity of the contract in their submissions, or even seeking to dismiss Bentivoglio's breach of contract claim against ECGI, Bentivoglio offers to withdraw his unjust enrichment claim if defendants concede the contract's validity. (Doc 85 at 11.) Bentivoglio's unjust enrichment allegation is a repetition of his breach of contract claim, which dooms the unjust enrichment claim as duplicative. Ortho-Clinical Diagnostics Bermuda Co. Ltd. v. FCM, LLC, No. 15 Civ. 5607 (NRB), 2017 WL 2984023, at *6 (S.D.N.Y. July 6, 2017). Bentivoglio alleges that defendants were unjustly enriched by breaching the Consulting Agreement and failing to pay the fees owed to him. (Doc 62 ¶ 66.) As this Court has previously found, "when a plaintiff has asserted a viable breach of contract claim,

an unjust enrichment claim should be dismissed as redundant." iSentium, LLC v. Bloomberg Finance L.P., No. 17-cv-7601 (PKC), 2018 WL 6025864, at *4 (S.D.N.Y. Nov. 16, 2018).

Accordingly, Bentivoglio's unjust enrichment claim is dismissed.

CONCLUSION

Defendants' motion to dismiss the first and third causes of action and to dismiss EFIL as a defendant is GRANTED. Bentivoglio's breach of contract claim against ECGI remains. The Clerk is directed to terminate the motion (Doc 80).

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
November 27, 2019